1 | Grant Kinsel, Bar No. 172407
GKinsel@perkinscoie.com
2 | Michael J. Song, Bar No. 243675
MSong@perkinscoie.com
3 |
**PERKINS COIE LLP**
4 | 1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
5 | Telephone:  310.788.9900
Facsimile:  310.788.3399
6 |
7 | Stacy Quan, Bar No. 138191
Stacy.quan@microsoft.com
8 | **MICROSOFT CORPORATION**
One Microsoft Way
9 | Redmond, WA 98052
Telephone:  425.882.8080
10 |

11 | Attorneys for Plaintiff **MICROSOFT CORPORATION**

12 | 

### UNITED STATES DISTRICT COURT

13 |

### CENTRAL DISTRICT OF CALIFORNIA

14 |

### WESTERN DIVISION

15 |

16 |

MICROSOFT CORPORATION, a Washington company

17 |

Plaintiff,

18 |

19 | v.

20 | PHOENIX SOLUTIONS, INC., a Maryland company

21 |

Defendant.

22 |

Case No. 10-cv-03846 MRP (SSx)

**MICROSOFT CORPORATION'S OPPOSITION TO MOTION TO DISMISS**

**[REDACTED]**

Date:  August 23, 2010
Time:  11:00 a.m.
Dept.:  Courtroom 12, Hon. M. R. Pfaelzer

23 |
24 |
25 |
26 |
27 |
28 |

LEGAL18704720.6

# TABLE OF CONTENTS

Page

1.  INTRODUCTION ................................................................................................... 1

2.  FACTS ....................................................................................................................... 2

   A.  Background of Microsoft's IVR Services for Amex ................................... 2

   B.  In 2006, Phoenix Claimed that the IVR System Used by Amex
       Infringed its Patents ......................................................................................... 3

   C.  In 2007, Phoenix Identified Tellme as the Provider of the
       Allegedly Infringing System and Continued to Accuse Amex of
       Infringing its Patents ....................................................................................... 4

   D.  Phoenix's Final Demand Letter in 2010 Alleged Infringement with
       Respect to All Fifteen of its Patents ............................................................ 6

   E.  Phoenix's Claim Charts Accused Tellme's System of Patent
       Infringement ..................................................................................................... 7

   F.  Given Phoenix's Threats to Amex and Litigious History, Microsoft
       Properly Acted to Protect its Customer and Vindicate its System ........... 9

3.  ARGUMENT ......................................................................................................... 10

   A.  Phoenix's Motion to Dismiss for Lack of Subject Matter
       Jurisdiction Pursuant to Rule 12(b)(1) Should be Denied ..................... 10

       (1)  Standard for Declaratory Relief ......................................................... 10

       (2)  There Is an Actual Controversy Between Microsoft and
            Phoenix ................................................................................................. 13

       (3)  Jurisdiction Is Not Limited to the Nine Patents Identified
            in Phoenix's Claim Charts ................................................................. 14

   B.  Phoenix's Motion to Dismiss for Failure to State a Claim Upon
       Which Relief Can be Granted Pursuant to Rule 12(b)(6) Should
       be Denied ......................................................................................................... 16

       (1)  The Standard for Pleading is Rule 8's Notice Pleading
            Standard ............................................................................................... 16

       (2)  Microsoft's First Claim for Relief for Declaratory Judgment
            of Non-Infringement is Sufficiently Specific ................................. 18

       (3)  Microsoft's Second Claim for Relief for Declaratory
            Judgment of Invalidity Is Sufficiently Specific ............................. 20

   C.  In the Alternative, Microsoft Requests Leave to Amend the
       Complaint ......................................................................................................... 21

4.  CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Allflex USA, Inc. v. AVID Identification Sys., Inc.*, No. EDCV-06-1109-SGL (OPx), 2007 U.S. Dist. LEXIS 71092 (C.D. Cal. Jan. 11, 2007) ........................... 15

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988)11-13, 16

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................. 16-17, 20-21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, L. Ed. 2d 929, 127 S. Ct. 1955 (2007) ........................................................................................ 16-17, 20-21

*BP Chems. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993) .............................. 12

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278 (Fed. Cir. 2008) ....... 11

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1998) ....................................................... 17

*Elan Pharma Int'l, Ltd. v. Lupin Ltd.*, No. 09-1008 (JAG), 2010 U.S. Dist. LEXIS 32306 (D. N.J. Mar. 31, 2010) ............................................................ 20-21

*Foman v. Davis*, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962) ..................... 22

*Grid Sys. Corp. v. Texas Instruments, Inc.*, 771 F. Supp. 1033 (N.D. Cal. 1991) ........ 21

*Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009) ................... 12

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 85 L. Ed. 826, 61 S. Ct. 510 (1941) ......................................................................................................... 11

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052, 103 L. Ed. 2d 581, 109 S. Ct. 1312 (1989) .................................. 11

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) ................................ 17

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, L. Ed. 2d 604, 127 S. Ct. 764 (2007) ....................................................................................... 1, 11, 13

*Microchip Tech. Inc. v. The Chamberlain Group, Inc.*, 441 F.3d 936 (Fed. Cir. 2006) .................................................................................................... 12-13

*Pfizer Inc. v. Apotex, Inc.*, No. 08-cv-7231, 2010 U.S. Dist. LEXIS 65482 (N.D. Ill. June 30, 2010) ......................................................................... 17-18, 20-21

*Qarbon, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046 (N.D. Cal. 2004) ........................ 21

*Sandisk Corp. v. STMicro., Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ........................ 11, 14

*Soilworks, LLC v. Midwest Indus. Supply, Inc.*, No. 06-2141-PHX-DGC, 2007 U.S. Dist. LEXIS 15832 (D. Ariz. Mar. 5, 2007) ..................................................... 12

*Sony Elec., Inc. v. Guardian Media Tech., Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007) ........ 10

*Sorensen v. Spectrum Brands, Inc.*, No. 09cv58 BTM (CAB), 2009 WL 5199461
   (S.D. Cal. Dec. 23, 2009) ...........................................................................21

*Super Prods. Corp. v. D.P. Way Corp.*, 546 F.2d 748 (7th Cir. 1976) ........................16

*SuperSack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).........15

*Teirstein v. AGA Med. Corp.*, No. 6:08cv14, 2009 WL 704138 (E.D. Tex.
   Mar. 16, 2009) ..............................................................................17, 20-21

*Weyer v. MySpace*, No. 10-cv-00499 (C.D. Cal. June 17, 2010) ..........................18-19

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F. Supp.
   2d 561 (E.D. Wis. 2007) ................................................................17, 20-21

## RULES

Fed. R. Civ. P. 8(a)(2) ......................................................................2, 16, 19

Fed. R. Civ. P. 15(a)(2) ...............................................................................21

Fed. R. Civ. P. 12(b)(1) .....................................................................1, 10, 14

Fed. R. Civ. P. 12(b)(6) ............................................................. 1, 16-17, 20

## STATUTES

Declaratory Relief Act, 28 U.S.C. § 2201(a) ..............................................10-11

## 1.   INTRODUCTION

Defendant Phoenix Solutions, Inc. has been threatening American Express ("Amex") with a patent infringement lawsuit since 2006.   Phoenix claims that Amex's interactive voice response ("IVR") system infringes fifteen Phoenix patents.   This accused system is operated by Microsoft Corporation to provide IVR services on Amex's behalf.[1]   Fearing that Phoenix would sue either it or its customer (or both), Microsoft filed a Complaint seeking a declaration of non-infringement and invalidity of the fifteen Phoenix patents.

Rather than pursue the infringement allegations it has been proclaiming since 2006, Phoenix moved to dismiss Microsoft's Complaint on two grounds.   First, Phoenix claims that the Court lacks subject matter jurisdiction over this declaratory relief action pursuant to Rule 12(b)(1) because Phoenix directly threatened Amex, not Microsoft, with a suit for infringement.   According to Phoenix, its failure to directly accuse Microsoft means there is no actual controversy between Phoenix and Microsoft, and, therefore, the Court lacks subject matter jurisdiction.   Second, Phoenix contends that the Court should dismiss Microsoft's claims for declaratory relief pursuant to Rule 12(b)(6) because Microsoft failed to allege sufficient facts in its Complaint.   According to Phoenix, despite the fact that it has threatened Amex for more than three years based on Amex's use of Microsoft's system, Phoenix is unable to determine the bases of Microsoft's claims.

Phoenix's first argument fails because it fundamentally misconstrues the standard for declaratory relief.   Under the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 166 L. Ed. 2d 604, 615, 127 S. Ct. 764, 771 (2007), the existence of an actual controversy does not rise or fall on whether a threat was directly delivered to the declaratory relief plaintiff.   Rather, an actual

---

[1]     This memorandum references Amex's system/services and Microsoft's system/services.   These terms are used interchangeably to refer to the IVR system/services accused by Phoenix of patent infringement.

1  controversy exists where there is a "substantial controversy, between parties having
2  adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a
3  declaratory judgment."  *Id.*  Given Phoenix's contention that the Microsoft system
4  used by Amex infringes its patents—exposing Microsoft to indemnity demands from
5  Amex and potential claims of direct and indirect infringement—there is no question
6  that there is a legal dispute between Phoenix and Microsoft.

7       Phoenix's second argument for dismissal misconstrues the standard for notice
8  pleading.  Phoenix apparently would have Microsoft plead evidentiary facts—such as,
9  how its IVR system does not infringe, and to identify particular pieces of prior art to
10  demonstrate why Phoenix's patents are invalid.  This is not the relevant standard.  All
11  that is required at this stage is a "short and plain statement" showing that Microsoft is
12  entitled to relief. Fed. R. Civ. P. 8(a).  Microsoft's Complaint does that and more.

13       Accordingly, Phoenix's Motion to Dismiss should be denied.

14

15  **2.   FACTS**

16  **A.   Background of Microsoft's IVR Services for Amex.**

17       In 2007, Microsoft acquired Tellme Networks, Inc.  Since the acquisition,
18  Tellme has been a wholly-owned and operated subsidiary of Microsoft.  *See*
19  Declaration of David Clark ("Clark Decl.") at ¶ 3.

20       Tellme has provided IVR services to Amex since 2003.  Tellme's platform is
21  built around its VoiceXML interpreter.  When a caller calls Amex's customer service
22  line, Tellme's telephony network answers the call.  The call is routed to Tellme's
23  VoiceXML interpreter, which interacts with:  (1) voice recognition components to
24  understand what the caller is saying, (2) audio and text-to-speech servers to playback
25  audio prompts to interact with the caller, and (3) Amex's back-end servers to retrieve
26  the information the customer desires.

27

28

**B.     In 2006, Phoenix Claimed that the IVR System Used by Amex Infringed its Patents.**

Phoenix first approached Amex regarding alleged infringement of its patents in a July 2006 letter accusing Amex's customer support line (800-528-4800) of infringement. *See* Clark Decl. Ex. A at 5. This customer support line is operated as part of the IVR services provided by Tellme to Amex. Declaration of Amelia Bacher at ¶ 3. According to Phoenix's July 2006 letter, "[a]fter reviewing your agent, we believe that such system, and its operation, is very likely covered by one or more claims of the Phoenix portfolio in this area." *See* Clark Decl. Ex. A. at 6.

Phoenix attached to its July 2006 demand letter "representative claim charts to help clarify how [Phoenix] believe[d] the inventions apply to typical contemporary Natural Language processing systems." *Id.* The claim charts purported to show how certain systems operated by SpeechWorks[2] infringed four of Phoenix's patents. *Id.* at 9-19.[3] For example, as seen in the figure to the right, Phoenix identified the "Telephony/App Server" and the Nuance Recognition Server in a SpeechWorks system as allegedly infringing. *Id.* at 12. While the claim charts were of



---

[2]     SpeechWorks is a subsidiary of Nuance Communications, Inc. It does not provide the accused Amex IVR services.

[3]     The four charted Phoenix patents included U.S. Patent Nos. 6,633,846; 6,616,172; 6,665,640; and 7,050,977 (the "'846," "'172," "'640," and "'977" patents, respectively).

1   marginal relevance given that they did not discuss the system provided by Tellme for

2   Amex, they did identify a third-party IVR service provider as the source of the

3   allegedly infringing system.

4       Phoenix followed-up with a more threatening letter to Amex a couple of months

5   later in September 2006. *Id.* at 3. In this letter, Phoenix again proclaimed that

6   Amex's "system is covered by the claims of [Phoenix's] U.S. Patents ['846, '172, '640,

7   and '977] as well as a recently allowed U.S. Application Publication." *Id.* According

8   to Phoenix, a licensing agreement was the "best course of action" for Amex. *Id.*

9       Phoenix's September 2006 threat caused Amex to demand indemnity from

10  Tellme. *Id.* Amex informed Tellme that "Phoenix asserts that [Amex's] speech based

11  electronic agent for its telephonic customer support line is likely to infringe Phoenix's

12  patent rights." *Id.* at 1. Further, Amex informed Tellme that it "believe[d] that these

13  allegations relate to the systems, resources and/or designs or Services provided by

14  Tellme to [Amex] …." *Id.*[4]

15

16  **C.   In 2007, Phoenix Identified Tellme as the Provider of the Allegedly Infringing System and Continued to Accuse Amex of Infringing its Patents.**

17      By January 2007, Phoenix focused its infringement allegations on Tellme's IVR

18  system. Specifically, Phoenix's counsel claimed that the Tellme system satisfies the

19  elements of several of the patents-in-suit—including the natural language processing

20  elements—because "[t]he TellMe system clearly supports language processing, and uses

21  grammars to aid in lexical analysis." Clark Decl. Ex. B at 2. Phoenix's counsel further

22  claimed that the Tellme system satisfied the patent's real-time processing limitations.

23  *Id.* Phoenix also pointed to the VoiceXML structure of Tellme's system, stating:

24      We note Tellme is a strong supporter of the VoiceXML standards, and
        fully supports its clients in the development of VoiceXML based web

25      servers to control user interaction. These webservers contain VoiceXML

26  _____

27  [4]    Microsoft will bring a copy of the indemnity agreement between Microsoft and Amex to the hearing
        on Phoenix's Motion to Dismiss for *in camera* inspection should the Court require more specific information

28  regarding the source of Microsoft's potential indemnity obligations to Amex.

coded pages which are perceivable within a speech browser.  We suggest that [Amex] should consider the use of *any VoiceXML based web servers* as falling within the scope of the '977 patent.

*Id.* at 3 (emphasis added).

In October 2007, Phoenix's counsel wrote another threatening demand letter to Amex.  *See* Clark Decl. Ex. C.  In this letter, Phoenix's counsel indicated that Phoenix had "successfully concluded a lawsuit against a Global Fortune 100 company for infringement of the same patents which [Amex] is accused of infringing for using substantially the same technology."  *Id.* at 1.  Phoenix's counsel also observed that Phoenix was "confident your own investigation will reveal that [Amex] is using the same underlying technology as this defendant and which is configured in the same manner."  *Id.*

Phoenix's October 2007 letter identified three more patents[5] that "include[d] features used by" Amex, and concluded with the following warning:

[Amex's] refusal to negotiate a license makes little sense.  Based on our success in the above litigation, and the information we have concerning [Amex's] higher cost savings per call, we have no doubt that we could achieve even better results in an infringement case against [Amex].

*Id.*

Approximately a year and a half later, Phoenix wrote again, this time expressly threatening litigation against Amex.  *See* Clark Decl. Ex. D.  In a February 2009 letter, Phoenix claimed this Court's decision in *Phoenix Solutions, Inc. v. The DirecTV Group, Inc.*[6] "confirms our conclusion that systems such as those used by [Amex] are infringing multiple claims of [Phoenix's] portfolio."  *Id.* at 1.  Phoenix's threat of litigation against Amex was unequivocal:

---

[5]    Although Phoenix purportedly identified four additional patents, one of the "new " patents (the '977 patent) was previously asserted.  The three "new" asserted patents included U.S. Patent Nos. 7,139,714; 7,203,646; and 7,225,125 (the "'714," "'646," and "'125" patents, respectively).

[6]    *Phoenix Solutions, Inc. v. The DirecTV Group, Inc.*, No. 2:08-cv-984 MRP(SSx) (C.D. Cal.).

We have initiated a new action against PG&E in California based on their refusal to take a license. *Our expectation is that new lawsuits will be filed in due course against other uncooperative holdouts as well.*

*Id.* (emphasis added).

**D.   Phoenix's Final Demand Letter in 2010 Alleged Infringement with Respect to All Fifteen of its Patents.**

Notwithstanding Phoenix's threats of litigation, Amex did not take a license and Phoenix did not file a lawsuit against Amex in 2009.  In 2010, however, Phoenix made another push.  On March 18, 2010, Phoenix wrote Amex again, claiming that the customer support line—which was provided to Amex by Microsoft—"is covered by Phoenix's patents."  *See* Clark Decl. Ex. E at 1; *see also* Compl. Ex. 1 (Dkt. # 1). Phoenix identified the seven patents originally discussed in 2006 and 2007, and stated that its "portfolio has since expanded to multiple additional patents directed towards speech recognition."  *Id.*  Phoenix also identified eight more patents[7]—fifteen patents in total—and concluded that "it is now time for us to reach a resolution concerning Amex's *use of fifteen of Phoenix's patents.*"  *Id.* at 2 (emphasis added).

**E.   Phoenix's Claim Charts Accused Tellme's System of Patent Infringement.**

In connection with its Motion to Dismiss, Phoenix attached claim charts for nine of the fifteen patents-in-suit that it had sent to Amex in April 2010.[8]  *See* Trojan Decl. Supp. Def.'s Mot. Dismiss Ex. 16 (Dkt. # 14-6).  These claim charts (1) belie Phoenix's claim that Microsoft "entirely mischaracterizes the facts concerning [Amex's] [alleged] infringement of Phoenix's patents," *see* Def.'s Mot. Dismiss at 11:14-16 (Dkt.

---

[7]       The eight new identified patents included U.S. Patent Nos. 7,277,854; 7,376,556; 7,392,185; 7,555,431; 7,624,007; 7,647,225; 7,657,424; and 7,672,841 (the "'854," "'556," "'185," "'431," "'007," "'225," "'424," and "'841" patents, respectively).

[8]       Specifically, Phoenix attached claim charts for the '846, '172, '640, '977, '714, '125, '854, '431, and '841 patents.

1  # 11), and (2) demonstrate that Phoenix's claims of infringement target the system

2  provided to Amex by Tellme, giving this Court subject matter jurisdiction over this

3  declaratory relief action.[9]

4       Each chart for the nine patents identifies Tellme's system as an allegedly

5  infringing instrumentality.   Un-redacted versions of Phoenix's claim charts are

6  attached to the Declaration of Grant Kinsel ("Kinsel Decl.") as Exhibits 1 through 9.

7  As just one example, Phoenix's chart regarding Claim 1 of the '846 patent relies on the

8  Tellme system to accuse Amex of infringement.   *See* Kinsel Decl. Ex. 1.   Excerpts are

9  set forth below.   *Id.* (emphasis added).

---

26  [9]    Phoenix filed and served redacted versions of these charts, even though they are manifestly not

27  confidential.   Under threat of a motion to compel, Phoenix's counsel agreed to turn them over, but only if Microsoft's counsel agreed to file the documents under seal.   Therefore, Microsoft files concurrently herewith

28  an application to file portions of this brief and related exhibits under seal.

1  '846 patent, Claim 1, Element 1:

21  Element 2:

-8-

1   The balance of the elements continue in similar fashion, relying on either

2   documents from Tellme or Nuance to assert infringement.  For instance, the claim's

3   final element is supposedly met as follows:

4

5

6

7

8

9

10

11

12

13

14   F.   **Given Phoenix's Threats to Amex and Litigious History, Microsoft Properly Acted to Protect its Customer and Vindicate its System.**

15   Phoenix's threats were consistent with its litigious history.  Phoenix has filed

16   infringement lawsuits against Sony,[10] Wells Fargo,[11] Pacific Gas & Electric,[12] DirecTV

17   and West.[13]  Each of these cases asserted several of the *same patents* that Phoenix has

18   asserted against Amex.

19   The DirecTV and West cases were of particular import to Microsoft.  DirecTV,

20   like Amex, outsourced its IVR system.  When DirecTV prevailed on a Motion for

21   Summary Judgment on the grounds of divided infringement, Phoenix did not just

22   walk away.  Instead, Phoenix sued the IVR system provider, West, for infringing

23   several of the *same patents* Phoenix identified in its correspondence to Amex.  Given

24   _____

25   [10]   *Phoenix Solutions, Inc. v. Sony Elec. Inc.*, No. 3:07-cv-2112 (N.D. Cal.).

26   [11]   *Phoenix Solutions, Inc. v. Wells Fargo & Co.*, No. 3:08-cv-863 (N.D. Cal.).

27   [12]   *Phoenix Solutions, Inc. v. Pac. Gas & Elec. Co.*, No. 2:09-cv-774 (C.D. Cal.).

28   [13]   *Phoenix Solutions, Inc. v. West Interactive Corp.*, No. 2:09-cv-8156 (C.D. Cal.).

1   that Phoenix had threatened Amex based on Tellme's services, and given that Phoenix

2   had previously sued another IVR services provider under similar circumstances,

3   Microsoft was effectively left with no option but to file this action for declaratory

4   relief.[14]

5

6   **3.    ARGUMENT**

7

8   **A.    Phoenix's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) Should be Denied.**

9         Phoenix makes two arguments as to why this Court lacks subject matter

10  jurisdiction.   Phoenix's first argument is that there is no actual controversy between

11  Microsoft and Phoenix because Phoenix never communicated its threats directly to

12  Microsoft.   Phoenix argues in the alternative that even if there is an actual controversy,

13  it is limited to the claims in the nine patents identified in the claim charts Phoenix

14  provided to Amex.  Both arguments fail.

15

16  **(1)    *Standard for Declaratory Relief.***

17         Subject matter jurisdiction under the Declaratory Relief Act, 28 U.S.C. §

18  2201(a), requires a showing of an actual case or controversy between the declaratory

19  relief plaintiff and defendant.  *Sony Elec., Inc. v. Guardian Media Tech., Ltd.*, 497 F.3d

20  1271, 1283 (Fed. Cir. 2007).  Proof of an actual case or controversy is not limited to

21  the four corners of the pleadings, and the Court may consider any admissible evidence

22  to determine the existence of jurisdiction.  *See McCarthy v. United States*, 850 F.2d

23

24  _____

25  [14]    On July 14, 2010, Microsoft learned that Phoenix threatened another Microsoft customer, United

26  Health Group, Inc. ("UHG"), based on UHG's alleged infringement of the fifteen patents identified by Phoenix as infringed by Amex.  *See* Clark Decl. Ex. F.  Phoenix's allegations against UHG appear to be

27  identical to its allegations against Amex—namely, that use of the Tellme system infringes Phoenix's fifteen patents. Microsoft believes that Phoenix has likely accused other Microsoft customers of infringement based on

28  their use of the Tellme system.

1  558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052, 103 L.Ed. 2d 581, 109 S. Ct.
2  1312 (1989).

3        The Supreme Court has eschewed a precise test to determine an actual case or
4  controversy under the Declaratory Relief Act.  Instead, "the question in each case is
5  whether the facts alleged, under all the circumstances, show that there is a substantial
6  controversy, between parties having adverse legal interests, of sufficient immediacy and
7  reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v.*
8  *Genentech, Inc.*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312
9  U.S. 270, 273, 85 L. Ed. 826, 829, 61 S. Ct. 510, 512 (1941)).  Applying
10 *MedImmune*, the Federal Circuit has held that "where a patentee asserts rights under a
11 patent based on certain identified ongoing or planned activity of another party, and
12 where that party contends that it has the right to engage in the accused activity without
13 license, an Article III case or controversy will arise."  *Sandisk Corp. v. STMicro., Inc.*,
14 480 F.3d 1372, 1381 (Fed. Cir. 2007).

15       An actual controversy may exist even if the patentee does not directly threaten
16 the declaratory plaintiff.  This is so because, "a declaratory judgment plaintiff does not
17 need to establish a reasonable apprehension of a lawsuit in order to establish that there
18 is an actual controversy between the parties."  *Sony Elec., Inc.*, 497 F.3d at 1284 (citing
19 *Sandisk*, 480 F.3d at 1380-81).  For instance, in *Caraco Pharm. Labs., Ltd. v. Forest*
20 *Labs., Inc.*, 527 F.3d 1278 (Fed. Cir. 2008), the Federal Circuit held that a Complaint
21 for declaratory relief was proper where the patentee merely listed its patents in the
22 FDA's Orange Book as valid patents covering the drug described in its New Drug
23 Application.

24       In *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir.
25 1988)*,* the Federal Circuit went further, stating that an actual controversy may be
26 found where "a patentee first learns of plaintiff's conduct upon receipt of the
27 complaint," and even in circumstances which "include *no* communication by
28 defendant to plaintiff."  *Id.* at 738 (emphasis in original).  In *Arrowhead*, the Federal

1   Circuit found an actual controversy where the patentee threatened the *customers* of the

2   declaratory relief plaintiff. *Id.* at 736-37. *See also Soilworks, LLC v. Midwest Indus.*

3   *Supply, Inc.*, No. 06-2141-PHX-DGC, 2007 U.S. Dist. LEXIS 15832, at *5-6 (D.

4   Ariz. Mar. 5, 2007) (holding that an actual controversy enabling declaratory relief was

5   created where "Defendant's letters to Plaintiff appear to have been carefully drafted to

6   avoid a direct accusation of infringement, but Defendant's letter to [Plaintiff's

7   customer] was more direct, setting forth Defendant's claimed rights under the patents

8   and then referring to Plaintiff as 'someone … accused of infringement'").

9        Further, the Federal Circuit has held that an adverse legal relationship may be

10  created based on indemnity obligations to at least one customer alleged to infringe. *See*

11  *Microchip Tech. Inc. v. The Chamberlain Group, Inc.*, 441 F.3d 936, 944 (Fed. Cir.

12  2006); *see also WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F.

13  Supp. 2d 561, 565-66 (E.D. Wis. 2007) (finding declaratory judgment jurisdiction

14  based on indemnity obligations to customers).

15       Recently, in *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir.

16  2009), the Federal Circuit went still further, stating:

17

18       Acceleron repeatedly emphasizes that "[a]t the time HP filed its complaint, Acceleron could not have asserted its right in the '021 patent against HP because it had not even determined if it had a basis to assert

19  the patent against HP." **However, it is irrelevant whether Acceleron had conducted an adequate investigation or whether it subjectively believed HP was infringing.** "The [test for declaratory judgment jurisdiction in

20  patent cases], however stated, is *objective* …." *Arrowhead*, 846 F.2d at 736 (emphasis added). "Indeed, it is the objective words and actions of

21  the patentee that are controlling." *BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993). Thus, **conduct that can be reasonably**

22  **inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction**.

23

24  *Id.* at 1363 (bold added) (reversing district court's dismissal based on lack of subject

25  matter jurisdiction based on its finding that there was "declaratory judgment

26  jurisdiction arising from a 'definite and concrete' dispute between … parties having

27  adverse legal interests"). The Federal Circuit has also held that a patentee's litigation

28

1   history can also demonstrate an intent to enforce a patent, creating declaratory

2   judgment jurisdiction. *See Arrowhead*, 846 F.2d at 737-38.

3

4   **(2)     *There Is an Actual Controversy Between Microsoft and Phoenix.***

5          It is undisputed that Phoenix never directly communicated its threats to

6   Microsoft.   But this is immaterial.   Similarly, Phoenix's claim that it "has not

7   conducted [an infringement] analysis" with respect to Microsoft is also of no

8   consequence.   As *HP*, *supra*, makes clear, it is irrelevant whether Phoenix has

9   conducted an adequate investigation, whether it subjectively believed Microsoft

10  infringed the patents-in-suit, or whether it directly threatened Microsoft.  Instead, the

11  question is whether, under all of the circumstances, there is a substantial controversy

12  between parties with adverse legal interests. *See MedImmune*, 549 U.S. at 127.  The

13  answer to that question is indisputably yes.

14         First, as seen most clearly in Phoenix's own claim charts, Phoenix accuses Amex

15  of infringing fifteen patents by *using Tellme's system*.   These allegations potentially

16  expose Microsoft to a claim for direct infringement of Phoenix's patents.  Even taking

17  Phoenix at its word that it "accused [Amex] of infringement because [Amex] took

18  actions that completed the [Amex] IVR system to cause it to infringe Phoenix's

19  patents," *see* Def.'s Mot. Dismiss at 11:16-19 (Dkt. # 11), Microsoft could still

20  potentially be exposed to a claim for indirect infringement.

21         Second, Phoenix accused Microsoft's customer, Amex, resulting in a demand for

22  indemnity by Amex against Microsoft.  As *Arrowhead*, *Microchip* and *WS Packaging*

23  *Group* teach, Phoenix's accusations to Amex and Amex's subsequent indemnity

24  demands to Microsoft create a legally adverse relationship between Phoenix and

25  Microsoft sufficient to create declaratory judgment jurisdiction.  Just as in *Arrowhead,*

26  846 F.2d at 738, where the declaratory relief plaintiff was not required "to keep [its]

27  head[] in the sand while a patentee picks [customers] off one by one and at its leisure,"

28

1   Microsoft was not required to wait for Phoenix to, at its leisure, sue Microsoft's
2   customers one-by-one, as it apparently intends to do.

3       Third, Phoenix's litigation history is objectively indicative of Phoenix's intent to
4   enforce the patents-in-suit against Microsoft.  In particular, Phoenix's lawsuit against
5   West—another IVR system provider—reasonably implies Phoenix's intent to enforce
6   some of the very same patents at issue here against a similarly situated provider, such as
7   Microsoft.

8       In sum, Phoenix and Microsoft have adverse legal interests and Phoenix's
9   actions have put Microsoft in "the position of either pursuing arguably illegal behavior
10  or abandoning that which [Microsoft] claims a right to do."  *Sandisk*, 480 F.3d at
11  1381.  Accordingly, Phoenix's Motion to Dismiss pursuant to Rule 12(b)(1) must be
12  denied.

13
14  **(3)   *Jurisdiction Is Not Limited to the Nine Patents Identified in Phoenix's Claim Charts.***

15      Phoenix half-heartedly argues that even if there is an actual controversy between
16  Phoenix and Microsoft, the case should be limited to the nine patents identified in
17  Phoenix's claim charts sent to Amex in April 2010.  According to Phoenix, although
18  Microsoft's declaratory judgment Complaint is directed to the fifteen patents
19  identified by Phoenix as being infringed, the Complaint should be limited to the nine
20  patents for which Phoenix sent Amex claim charts.  Phoenix urges that the six non-
21  charted patents should not be part of this case.[15]  *See* Def.'s Mot. Dismiss at 12:8-27
22  (Dkt. # 11).  Phoenix's argument fails.

23      Phoenix makes no attempt to square its argument with its accusation that Amex
24  "use[s] fifteen of Phoenix's patents."  *See* Clark Decl. Ex. E at 2.  Moreover, Phoenix
25  can easily limit the scope of this declaratory relief action to exclude the non-charted

26  _____

27  [15]     The six patents that Phoenix claims should be excluded include:  the '646; '556; '185; '007; '225; and
28  '424 patents (collectively the "non-charted patents").

1    patents by simply stipulating to judgment of non-infringement or by entering into a

2    covenant not to sue Microsoft, Amex or any other Microsoft customer with respect to

3    these patents. *See, e.g.*, *SuperSack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054,

4    1058 (Fed. Cir. 1995) (noting that "a patentee defending against an action for a

5    declaratory judgment of invalidity can divest the trial court of jurisdiction over the case

6    by filing a covenant not to assert the patent at issue against the putative infringer with

7    respect to any of its past, present, or future acts"). Phoenix, however, has not yet done

8    so or even indicated a willingness to do so. Accordingly, a substantial controversy

9    between Phoenix and Microsoft remains as to ***all fifteen patents*** asserted by Phoenix.

10         Furthermore, this Court has already rejected an argument almost exactly like

11    Phoenix's. *See Allflex USA, Inc. v. AVID Identification Sys., Inc.*, No. EDCV-06-1109-

12    SGL (OPx), 2007 U.S. Dist. LEXIS 71092 (C.D. Cal. Jan. 11, 2007). Specifically, in

13    *Allflex*, the patentee originally alleged infringement of two patents. *Id.* at *7-8. Later,

14    the patentee filed a complaint alleging infringement of two different patents, but not

15    asserting the original two patents. *Id.* at *8-9. After settlement attempts failed, the

16    accused infringer filed a complaint for declaratory relief as to all four of the patents

17    (among other patents). *Id.* at *16. The patentee moved to dismiss the claims with

18    respect to the original two patents that were not part of the patentee's complaint,

19    arguing that the declaratory relief plaintiff did not have an objective belief that the

20    patentee would file a new suit on these patents. *Id.* at *30-31. This Court denied the

21    patentee's motion to dismiss, noting that the patentee never disavowed that it would

22    file suit on the original patents, even though they were not part of the patentee's

23    complaint. *Id.* at *31-32. Without such an express disavowal, this Court held that

24    nothing dissipated the accused infringer's reasonable apprehension of suit. *Id.* at *32.

25         Such is the case here. While Phoenix may have only charted nine of the fifteen

26    identified patents, Phoenix fails to explain how this dissipates the substantial

27    controversy with respect to the other six patents that Phoenix accused Amex of

28

1    infringing.  In sum, Phoenix's argument that the present action be limited to nine

2    patents should be rejected.[16]

3

4    **B.    Phoenix's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to Rule 12(b)(6) Should be Denied.**

5         Phoenix moves to dismiss Microsoft's claims for declaratory judgment of non-

6    infringement and invalidity for failure to allege sufficient facts pursuant to Fed. R. Civ.

7    P. 12(b)(6).  *See* Def.'s Mot. Dismiss at 3:1-9:9 (Dkt. # 11).  Phoenix's argument fails

8    because Phoenix improperly attempts to transfigure Rule 8's requirement of a "short

9    and plain statement" into something akin to Rule 9's requirement of particularized

10   facts.  As discussed in detail below, Phoenix's Rule 12(b)(6) Motion should be denied

11   because Microsoft's Complaint meets Rule 8's notice pleading standard, is supported

12   by Form 18, and provides more than sufficient notice to enable Phoenix to respond.

13

14   **(1)    *The Standard for Pleading is Rule 8's Notice Pleading Standard.***

15        Federal Rule of Civil Procure 8(a) provides that "[a] pleading that states a claim

16   for relief must contain … a short and plain statement of the claim showing that the

17   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss,

18   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

19   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L.

20   Ed. 2d 868, 884 (2009) ("*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

21   167 L. Ed. 2d 929, 949, 127 S. Ct. 1955, 1974 (2007) ("*Twombly*").  "A claim has

22   facial plausibility when the plaintiff pleads factual content that allows the court to draw

23

24   [16]    Phoenix also disingenuously argues that in order to maintain an actual controversy, Microsoft has the burden to prove that its "IVR services are 'similar to that described' in Phoenix's patents and 'potentially

25   infringing' the patents."  *See* Def.'s Mot. Dismiss at 11:25-12:7 (Dkt. # 11) (citing *Super Prods. Corp. v. D.P.

26   Way Corp.*, 546 F.2d 748, 753 (7th Cir. 1976).  The Federal Circuit rejected this *exact* argument more than twenty years ago, stating that "[i]t is at best incongruous to require that one seeking a declaration of

27   noninfringement prove its process or product is the "same as" or "identical" to the patented process or product."  *Arrowhead Indus. Water, Inc.*, 846 F.2d at 738 (reversing and reprimanding the district court for

28   misreading *Super Prods. Corp.* in precisely the same way Phoenix urges here.)

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). A court must limit its review of a motion to dismiss under Rule 12(b)(6) to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

Courts have found that the Rule 8 standard applies to a declaratory relief counterclaim. For example, in *Teirstein v. AGA Med. Corp.*, No. 6:08cv14, 2009 WL 704138, at *5-6 (E.D. Tex. Mar. 16, 2009), the district court denied a motion to dismiss a declaratory relief counterclaim for patent invalidity. Relying on *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007), the *Teirstein* court found that it would be incongruous to have one standard for an infringement plaintiff and a higher standard for a declaratory relief plaintiff:

> The Federal Rules do not require Plaintiff to assert facts as to why the accused products allegedly infringe, nor to specifically list the accused products. Thus, to require Defendant to state facts as to why the '995 patent is invalid or to list invalidating prior art as Plaintiff suggests, would be to heighten the pleading standard for an invalidity counterclaim.

*Teirsein*, 2009 WL 704138 at *5.

Similarly, in *Pfizer Inc. v. Apotex, Inc.*, No. 08-cv-7231, 2010 U.S. Dist. LEXIS 65482 (N.D. Ill. June 30, 2010), the counterclaim defendant moved to dismiss an invalidity counterclaim alleging that the asserted patents are "'invalid for failure to comply with one or more of the conditions of patentability set forth in Title 35 of the United States Code.'" *Id.* at *47. In denying the motion to dismiss, the *Pfizer* court pointed out that the allegation "put Pfizer on notice of what Apotex is claiming—invalidity of the Unasserted Patents—and the grounds upon which this claim rests—failure to satisfy one or more of the conditions of patentability." *Id.* (noting that requiring more detailed pleading would "undermine the Local Patent Rules, which require more detailed disclosures at a later stage").

(2)   *Microsoft's First Claim for Relief for Declaratory Judgment of Non-Infringement is Sufficiently Specific.*

In its Complaint, Microsoft specifically alleged the following:

• That Microsoft "is a provider of interactive voice response services," *see* Compl. at ¶ 20 (Dkt. # 1);

• That Microsoft "provides IVR services for [Amex]," *see id.*;

• That Phoenix claims that the IVR services provided to Amex by Microsoft "are covered by Phoenix's patents," *see id.* at ¶ 23;

• That Phoenix's counsel identified all fifteen of the patents-in-suit as allegedly infringed by the system provided to Amex by Microsoft, *see id.*;

• That Amex was "at the top of Phoenix's list," *see id.*;

• That there is a substantial, continuing and justiciable controversy between Microsoft and Phoenix, *see id.* at ¶ 24; and

• That no claim of the patents-in-suit can be construed to cover any IVR services Microsoft provides for Amex, and, thus, these services do not infringe Phoenix's patents, *see id.* at ¶ 25.

These allegations sufficiently specify the grounds for declaratory relief subject matter jurisdiction. *Id.* at ¶ 23 & Ex. 1. They also specify the allegedly infringing instrumentalities and the allegedly infringed patents. *Id.* at ¶¶ 22, 24, 25. Short of pleading evidence demonstrating *why* Microsoft does not infringe the asserted patents, it is difficult to imagine what additional facts could be needed.

This Court's June 17, 2010 decision in *Weyer v. MySpace*, No. 10-cv-00499 ("Weyer") is consistent with denying Phoenix's motion. In *Weyer*, this Court agreed with the Federal Circuit, "that a party alleging direct infringement need only comply with Form 18." *Id.* at 3. The Court reasoned that "minimal pleading of direct infringement is sufficient because this Court requires the prompt filing of infringement contentions, which put the party accused of infringement on detailed notice of the basis for the allegations against it." *Id.* at 3-4.

1    This Court's standard in *Weyer* should apply to both a direct infringement

2    claim, and a declaratory relief action for non-infringement.  It would be incongruous

3    to have one standard for a plaintiff asserting a claim for patent infringement, and a

4    different—and higher—standard for a plaintiff asserting a claim for non-infringement.

5    Indeed, if anything, the higher standard should be on the plaintiff asserting

6    infringement:  Whereas a defendant accused of infringement in a bare-bones-Form 18-

7    complaint might legitimately complain that he has no way to adequately understand

8    the basis of the infringement allegations, the same thing cannot be said for a

9    declaratory relief defendant like Phoenix.

10    Further, at Rule 8's heart is the uncontroversial policy that a defendant should

11    have fair notice of the claims asserted against him.  Phoenix's position that Microsoft's

12    Complaint does not give it fair notice makes a mockery of this policy.  Phoenix has

13    doggedly sought a license from Amex for more than three years.   Phoenix has

14    repeatedly stated that it has studied Amex's system.  Phoenix has repeatedly stated that

15    it is "confident" that the system used by Amex infringes Phoenix's patents.  Phoenix

16    has repeatedly warned that it would sue Amex for infringing its patents based on this

17    system.  Given these proclamations, Phoenix's claim that the Court should dismiss

18    Microsoft's Complaint because Phoenix has inadequate notice of what it must defend

19    is a deep irony.  In a nutshell, what Phoenix must defend is its own, repeated

20    infringement accusations.

21    Accordingly, Phoenix's Motion to Dismiss Microsoft's First Claim for Relief for

22    a Declaratory Judgment of Non-Infringement should be denied.

23
24    **(3)   *Microsoft's Second Claim for Relief for Declaratory Judgment of Invalidity Is Sufficiently Specific.***

25    Like its First Claim for Relief, Microsoft's Second Claim for Relief for a

26    Declaratory Judgment of  Invalidity is sufficiently specific to withstand a Rule 12(b)(6)

27    motion.  Notably, Microsoft has not alleged claims involving inequitable conduct or

28    fraud.  Instead, Microsoft asserts only invalidity based on sections 101, 102, 103, and

112 of Title 35.  Accordingly, Microsoft's Second Claim for Relief need only meet the notice pleading requirement of Rule 8, not the specific pleading requirement of Rule 9.

Indeed, courts have found allegations nearly identical to Microsoft's Second Claim to be sufficiently specific to withstand a motion to dismiss.  *See, e.g.*, *Teirstein*, 2007 WL 704138, at *4 (denying a motion to dismiss an invalidity counterclaim, which alleged that "[t]he claims of the … patent are invalid for failing to satisfy one or more of the statutory requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112"); *Pfizer Inc*, 2010 U.S. Dist. LEXIS 65482, at *47 (denying a motion to dismiss an invalidity counterclaim, which alleged that the asserted patents are "invalid for failure to comply with one or more of the conditions of patentability set forth in Title 35 of the United States Code")*; Elan Pharma Int'l Ltd. v. Lupin Ltd.*, No. 09-1008 (JAG), 2010 U.S. Dist. LEXIS 32306, at *11 (D. N.J. Mar. 31, 2010) (denying a motion to dismiss an invalidity counterclaim, which alleged that the asserted patents "are invalid under one or more provisions of 35 U.S.C. §§ 101-105").

In contrast, the cases cited by Phoenix are readily distinguishable.  Indeed, Phoenix misrepresents the case law arguing:

> Courts have applied the pleading standards as explained in *Twombly* and *Iqbal* to patent cases.  In particular, courts have held that a claim for invalidity of a patent that merely states that the patent is invalid under the provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112 is insufficient and should be dismissed.

Def.'s Mot. Dismiss at 4:13-17 (Dkt. # 11).  Two of the cases Phoenix cites in support of this proposition—*Qarbon, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046 (N.D. Cal. 2004) and *Grid Sys. Corp. v. Texas Instruments, Inc.*, 771 F. Supp. 1033 (N.D. Cal. 1991)—were both decided ***before*** *Twombly* and *Iqbal*.  *See* Def.'s Mot. Dismiss at 4:25-6:22 (Dkt. # 11).  Phoenix fails to mention that in the third case it cites, *Sorensen v. Spectrum Brands, Inc.*, No. 09cv58 BTM (CAB), 2009 WL 5199461, at *1 (S.D. Cal. Dec. 23, 2009), the Motion to Dismiss for Declaratory Judgment of Invalidity was *unopposed*.  *See* Def.'s Mot. Dismiss at 4:18-26 (Dkt. # 11).  The fourth case

1   Phoenix cites is *Weyer*, which did not even involve a claim involving patent invalidity.

2   Rather, in *Weyer*, this Court held that *Twombly* and *Iqbal* did **not** change the notice

3   pleading standard under Rule 8 and that a Complaint mimicking Form 18 in the

4   Appendix to the Federal Rules adequately pled a claim for direct infringement, thereby

5   supporting Microsoft, not Phoenix.

6         Here, as in *Teirstein*, *Pfizer* and *Elan*, Microsoft's allegations of invalidity put

7   Phoenix on notice of what Microsoft is contending—that one or more of the claims of

8   each of the patents-in-suit are invalid—and why—for failure to meet the requirements

9   of 35 U.S.C. §§ 101, 102, 103, or 112.  Indeed, what other facts should Microsoft

10   allege?  Specific prior art references?  Particular claim constructions showing that

11   particular claims do not specifically define the invention?  Such evidentiary pleading

12   would be inconsistent with Rule 8(a)'s mandate for a "short and plain statement" of

13   the claim for relief.

14

15   **C.     In the Alternative, Microsoft Requests Leave to Amend the Complaint.**

16         If the Court grants Phoenix's Motion to Dismiss, Microsoft requests leave to

17   amend the Complaint in order to cure any deficiency.  The Federal Rules provide that

18   "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ.

19   P. 15(a)(2).  Indeed, the Supreme Court has held that "[i]n the absence of any

20   apparent or declared reason—such as undue delay, bad faith or dilatory motive on the

21   part of the movant, repeated failure to cure deficiencies by amendments previously

22   allowed, undue prejudice to the opposing party by virtue of allowance of the

23   amendment, futility of amendment, etc.—the leave sought should, as the rules require,

24   be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 226, 83 S. Ct.

25   227, 230 (1962).  Moreover, to the extent necessary, Microsoft requests leave of the

26   Court to take discovery from Phoenix directed to identifying all Microsoft customers

27   Phoenix has accused to further demonstrate the existence of subject matter jurisdiction.

28

4.    CONCLUSION

For all of the reasons stated above, the Court should deny Phoenix's Motion to Dismiss.  In the alternative, should the Court grant Phoenix's Motion to Dismiss, the Court should grant Microsoft leave to amend its Complaint and/or grant Microsoft leave to take jurisdictional discovery directed to identifying additional Microsoft customers threatened by Phoenix.


DATED:  July 19, 2010              PERKINS COIE LLP

                                   By:    *Grant Kinsel*
                                          Grant Kinsel, Bar No. 172407
                                          GKinsel@perkinscoie.com

                                   Attorneys for Plaintiff
                                   MICROSOFT CORPORATION